**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

**MICHAEL MOORE,**

                          **Plaintiff,**

          **-against-**

**KILOLO KIJAKAZI,**
**COMMISSIONER OF SOCIAL SECURITY,**

                   **Defendant.**

**1:20-CV-10326 (ALC)**

---------------------------------------------------------- x

**1:20-CV-10326 (ALC)**

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

      Plaintiff Michael Moore ("Plaintiff," "Claimant" or "Mr. Moore") brings this action challenging the Commissioner of Social Security's (the "Commissioner" or "Defendant") final decision that Plaintiff was not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). Before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). ECF No's. 17, 19. Upon review of the parties' submissions and for the reasons stated below, Plaintiff's motion is **DENIED,** and Defendant's cross-motion is **GRANTED**.

## BACKGROUND

**I.**     **Procedural Background**

      **I.**     On February 6, 2019, Michael Moore filed an application for disability insurance benefits, alleging disability beginning on May 18, 2018. R. at 11.[1]  Plaintiff's alleged

---

[1] "R." refers to the Certified Administrative Record prepared by the Social Security Administration. ECF No. 14. Pagination follows original pagination in the Certified Administrative Record.

impairments included reactive airway disease/asthma, rhinitis/sinusitis, left shoulder derangement, left knee derangement, and degenerative disc disease of the thoracic and lumbar spine. R. at 13; *see also* R. at 250. His application was denied on April 12, 2019 and denied again upon reconsideration on June 14, 2019. R. at 11. Plaintiff filed a written request for a hearing on June 14, 2019, and a video hearing was held on December 17, 2019. *Id*. Mr. Moore appeared at the hearing represented by Max D. Liefer. Michael Smith, an impartial vocational expert, also appeared and testified at the hearing. *Id*. Brian Lemoine, Administrative Law Judge ("ALJ"), issued a decision denying Mr. Moore's application on December 24, 2019, finding that he was not disabled during the relevant period. R. at 11–18. Mr. Moore requested review of the ALJ's decision by the Appeals Council on December 30, 2019. R. at 207-210. The Appeals Council denied Mr. Moore's request for review, rendering the ALJ's decision the final decision of the Commissioner. R. at 1–7. Plaintiff filed this civil action in the Southern District of New York on December 4, 2020, following the Appeals Council denial of review. ECF No. 1. Plaintiff moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on October 3, 2021. ECF No. 17. Defendant immediately cross-moved for judgment on the pleadings. ECF No. 19. Plaintiff also submitted a reply memorandum in opposition to the Defendant's cross-motion for judgment on the pleadings on January 13, 2022. ECF No. 23.

II.  **Factual Background**

    A.  **Non-Medical Evidence**

        *1.  Plaintiff's Background*

Born on May 8, 1972, Michael Moore was 46 years old at the onset of the alleged disability. R. at 238. Mr. Moore completed high school, 2 years of college, and specialized job training. R. at 251. He attended SUNY DELPHI for plumbing, the NYPD Police Academy, and

the FDNY EMS Training Academy. *Id*. Prior to the onset of the alleged disability, Mr. Moore worked as a police officer with NYPD for 6 years, a firefighter with FDNY for 13 years, and as an auto repair mechanic for 18 years. R. at 240. He lives with his wife and two children, a 17-year-old daughter and 15-year-old son. R. at 78.

### 2.    Plaintiff's Alleged Disability

Mr. Moore has been unable to work due to his alleged disability since May 18, 2018. R. at 250. On December 9, 2003, plaintiff was diagnosed with a broken left anterior glenoid rim (shoulder) after a large portion of plaster in the ceiling collapsed on top of him. R. at 1076. Mr. Moore testified that this injury restricts full range of motion in his shoulder. R. at 74. At times, Mr. Moore must use his right arm to move his left arm back to a resting position. R. at 78. He suffers from chronic pain in his left shoulder and can only lift 5 to 10 pounds. R. at 74, 77.

In June of 2016, FDNY put Mr. Moore on medical disability leave primarily due to lung issues diagnosed as reactive airway disease and asthma. R. at 72-73. Plaintiff takes daily medication for asthma. R. at 72-73. Plaintiff testified that the medicine he takes makes it hard for him to concentrate. R. 75-76. His lung ailments are triggered by cold weather, musty locations, chemicals, and even women's perfume. R. at 77.

Mr. Moore also suffers from chronic pain in his lower back and left knee. R. at 76. His left knee has a torn ACL that has never been repaired. R. at 73. Due to his alleged back and knee disabilities, Mr. Moore testified that he can only stand for around 10 to 15 minutes and sit for approximately 20 minutes R. at 74-75. The average day for Mr. Moore is inactive. He attempts to help his children prepare for school and complete homework, but primarily lays around, reads, watches the news, sleeps, and waits for his family to return home from their days. R. at 76.

### 3.        *Vocational Expert Testimony*

Vocational Expert Michael Smith ("VE") was present for Mr. Moore's ALJ hearing and offered testimony. R. at 82–88. He based his testimony on approximately 25 years of experience in substance abuse counseling, vocational and career education, mental health counseling, and program development. R. at 320. During the testimony, the VE examined situations posed by the ALJ in which an individual would have similar conditions as Mr. Moore and testified to the likelihood of that person's employment. R. at 83-88. The VE was first asked to determine the types of jobs available for a hypothetical individual with the ability to perform tasks at a light exertional level with no overhead lifting with the left upper extremity and no concentrated exposure to environmental irritants including dusts, odors, fumes, and gasses. R. at 84-85. The VE highlighted that Mr. Moore's prior occupation as a firefighter was considered "very heavy exertion"; therefore, Mr. Moore would be unable to perform his prior work. R. at 84-85. However, Mr. Moore could perform other jobs. R. at 85-86. Mr. Moore could work as a survey worker, sales attendant, or photocopy machine operator. *Id*.

The VE was asked to determine the types of jobs available for a second hypothetical in which the ALJ changed the exertion level to sedentary while keeping the same environmental, postural and reaching limitations. R. at 86. The VE offered three potential jobs: ticket counter, call-out operator, and addresser. *Id*. Third, the ALJ added another limitation to the second hypothetical: to be absent from work two or more days a month. *Id*. The VE testified that most employers would view that as excessive and the hypothetical individual would not be able to maintain a job on an ongoing basis. R. at 87. Fourth, the ALJ added a different limitation to the second hypothetical: to be off-task at least 15% of the workday on a daily basis. *Id*. The VE

answered similarly, stating that most employers would view this limitation as excessive; therefore, the hypothetical individual would not be able to maintain a job. *Id*.

Plaintiff's attorney highlighted that the three jobs mentioned by the VE at the sedentary exertion level (ticket counter, call-out operator, and addresser) are not prevalent in the national economy with less than 9,000 jobs for each position. R. at 88.

### 4.    *Disability Report*

Mr. Moore completed a disability report listing Certified WTC Respiratory Disease, Reactive Airway Disease, asthma, solid and ground glass lung nodules (inflammation), moderate bronchial wall thickening, mild Apical Emphysema, large eschar in his left nasal passage (causing frequent nose bleeds), disc degeneration, osteonecrosis, and a severed quad tendon in left leg as his medical conditions. R. at 250. Ground glass is a general term used by radiologists as a sign of inflammation. R. at 54. Mr. Moore takes the following medications: Albuterol Sulfate HFA 90 mcg/actuation aerosol inhaler, Azithromycin, Bacitracin, 1-lysine, Loratadine, Nasacort, Pulmicort, Skelaxin, Ventolin HFA, and vitamins D3 and magnesium. R. at 253.

### 5.    *Function Report*

Mr. Moore completed a function report on March 8, 2019. R. at 267-77. Mr. Moore reported that his daily activities are restricted to helping his children prepare for school in the morning, attending his children's sporting events, helping his mother who has Parkinson's Disease, and letting the dog out into the fenced backyard. R. at 267. His disabilities restrict him from going anywhere that he could be exposed to fumes or dust. R. at 268. Prior to the onset of his disabilities, he was also able to play sports with his children and jog. *Id*. He has difficulty getting dressed each day because putting socks on and tying his shoes aggravate his ailments. *Id*. Mr. Moore is capable of driving, preparing basic meals, doing laundry and light yard work. R. at

270-71. His disabilities have caused him to spend more time alone at home. R. at 272. Mr.

Moore experiences pain every day due to his ailments. R. at 275.

### B.    Medical Evidence

#### 1.    *Hospital for Special Surgery*

Mr. Moore was initially treated by Jo A. Hannafin, M.D., PhD in February 2006 for left

shoulder injuries sustained during his work as a firefighter. R. at 1431. An MRI revealed a

fractured shoulder and labrum tear (moderate joint effusion, acute Hills-Sachs lesion on the

posterosuperior humeral head, fracture of the anteroinferior glenoid, displaced labrum tear). Id.

Dr. Hannafin suggested surgery (arthroscopic anterior stabilization) five to six weeks after the

initial evaluation. Id. Thirteen days post-operation (arthroscopy), a physical evaluation revealed

external shoulder rotation of twenty degrees and interior rotation to the anterior chest wall. R. at

1427. Five months post-operation a physical examination determined that Mr. Moore had full

forward flexion, full abduction, and lacked one level of internal rotation compared to his right

side. R. at 1384. External rotation was symmetrical and pain free. Id. Motor testing revealed

excellent resistive strength. Id. Mr. Moore was cleared to return to his work as a firefighter. Id.

#### 2.    *Bureau of Health Services and NYU Langone Radiology*

Mr. Moore received a baseline chest CT scan on May 27, 2015, and follow-up scans on

May 2, 2017, May 7, 2018, November 2, 2018, and November 12, 2019. R. at 47-57; *see also* R.

at 1469-70. On November 2, 2018, a previously referenced 6mm subsolid nodule in the posterior

basilar left lower lobe was detected and determined unchanged in size since the baseline test in

2015. R. at 1470. There was a minimal increase in the density of the nodule, which could

represent adenocarcinoma spectrum lesions. *Id*. The scan also found ongoing mild to moderate

bronchial wall thickening and mild centrilobular emphysema. *Id*. A faint ground glass nodule

6

without any solid component was also detected. *Id*. The nodule was stable compared to 2015; however, it may represent an area of indolent adenocarcinoma spectrum lesion such as atypical adenomatous hyperplasia. *Id*. The CT scan also highlighted long-standing humeral head avascular necrosis in Mr. Moore's shoulder. R. at 1469. Dr. David J. Prezant, M.D., recommended a final follow-up chest CT in two years. *Id*.

### 3.    *Northeast Orthopedics and Sports Medicine ("Northeast")*

On March 11, 2015, Mr. Moore attended Northeast complaining of low back pain in the midline and traveling across the lumbosacral region. R. at 531. Severe pain symptoms emerged after a fall on the sidewalk. *Id*. However, Mr. Moore has been plagued by back pain since 2003. Northeast completed an MRI and identified a high-intensity zone ("HIZ") at L4/L5 and a clear central annular tear on a sagittal slice of L5/S1. R. at 533. Follow-up reports indicate back pain improvement; however, Mr. Moore suffers from occasional stiffness and spasms. R. at 502-27. On April 9, 2015, he reported that his "low back had brief intermittent spasms last night." R. at 519. On May 1, 2015, he reported that his back was "feeling good with some tightness" and on May 6, 2015, he reported "a little tightness but overall feeling stronger." R. at 508, 510.

During follow up visits beginning in October 2016, Mr. Moore received care for left knee and left shoulder injuries sustained during a fall while hiking. Jason Fond, M.D., assessed Mr. Moore and determined that he had possible osteonecrosis of the humeral head in his shoulder and an anterior cruciate ligament (ACL) rupture in his left knee. R. at 483. Dr. Fond discussed possible ACL reconstruction surgery. R. at 477. In addition, Dr. Fond opined that the ACL rupture was the cause of Mr. Moore's instability and quadriceps injury. *Id*. Northeast assessed his functional limitations as "limited walking," "limited standing," "limited ability to transfer," and "limited ability to run." R. at 478. Prior to improvement due to physical therapy, Northeast's

functional assessment concluded that Mr. Moore could only stand and/or walk for 5 minutes. R. at 479. An X-ray of his shoulder revealed mild degenerative changes and a left shoulder strain with mild arthritis. R. at 486.

### 4.     ENT and Allergy Associates ("ENT")

On February 27, 2019, Mr. Moore underwent a diagnostic nasal endoscopy due to bloody sinus discharge, nasal congestion, postnasal drainage, and recurring crusting. R. at 1435. The symptoms are worsened by air pollutants, chemical irritants, and smoke. *Id*. The endoscopy revealed Chronic Pansinusitis with septal crusting. R. at 1433-34. Michael Shohet, M.D., prescribed bacitracin to apply to the nasal route 2-3 times daily for 6 weeks. *Id*. Mr. Moore returned for a follow up on March 4, 2019, due to persistent symptoms leading to at least one nosebleed per day. R. at 1457. The ailment was also causing headaches and nasal congestion. *Id*. An endoscopy was performed revealing a large eschar with underlying ulceration at the left caudal septum. *Id*.

### C.     Opinion Evidence

### 1.     Dr. Nina Spooner, M.D. - Internal Medicine Consultative Examination

On April 1, 2019, Dr. Nina Spooner evaluated Mr. Moore on behalf of the Social Security Administration, following a referral by the Division of Disability Determination. R. at 1474-83. Claimant's chief complaint was shortness of breath. R. at 1475. He was a 9/11 first responder, and in 2010, he began experiencing episodes of shortness of breath and frequent coughing associated with chest heaviness. *Id*. Claimant has been diagnosed with asthma, mild atypical emphysema, reactive airways dysfunction syndrome, and chronic sinusitis. *Id*. Lung imaging studies showed ground glass nodules that were increasing in size. *Id*. Dr. Spooner performed a Total Forced Vital Capacity (FVC) BTPS test and a One Second Forced Expiratory

Volume (FEV₁) BTPS test. R. at 1479. Results showed that plaintiff's FVC was at 4.93 liters, his FEV₁ was at 3.63 liters, both within normal limits. *Id*.

Claimant has a history of low back pain diagnosed as lumbar degenerative disease. *Id*. The back pain flares in intensity to 10/10 when the Claimant experiences muscle spasms. R. at 1476. Claimant cannot sit or stand for longer than 30 minutes at a time due to increasing back stiffness. *Id*. Claimant experiences left shoulder pain of 4/10 intensity 10 to 12 hours a day due to the left shoulder injury sustained while he was a firefighter in 2006. *Id*. The pain feels like stabbing and is worsened by movement, especially overhead reaching. *Id*. His shoulder was reaggravated when he fell in 2016. That fall also caused a tear in his left quadriceps tendon and the rupture of his left ACL. *Id*. The left knee injury causes pain of 4/10 intensity for several hours per day. *Id*.

Dr. Spooner's diagnosis included: chronic pain the low back, left shoulder, and left knee, lumbar degenerative disc disease, left shoulder pathology, torn left ACL, asthma, mild atypical emphysema, reactive airways dysfunction syndrome, chronic sinusitis and nasal eschar, and elevated blood pressure. R. at 1479. Dr. Spooner determined that his prognosis was fair. *Id*. Dr. Spooner noted that the claimant has moderate limitations for bending, lifting, carrying, and squatting. *Id*. Claimant also has mild limitations for sitting, standing, and reaching with the left arm. Claimant should avoid smoke, dust, and known respiratory irritants. *Id*.

### 2.      *Drs. J. Sharif-Najafi, M.D. and S. Padmaraju, M.D. - State Agency Medical Consultants*

Dr. J. Sharif-Najafi reviewed the medical evidence of record to determine Mr. Moore's disability insurance benefits claim at the initial level. R. at 90-100. Dr. Sharif-Najafi determined

that Mr. Moore could occasionally lift or carry approximately 20 pounds and frequently carry or lift approximately 10 pounds. R. at 96. Mr. Moore can stand, walk and sit for approximately 6 hours in an 8-hour workday. *Id.* Dr. Sharif-Najafi also determined that Mr. Moore has postural limitations. R. at 97. Mr. Moore can only occasionally climb stairs, stoop, kneel, crouch, or crawl. *Id.* Mr. Moore does not have any environmental limitations but should avoid concentrated exposure of fumes, odors, dusts, gasses, and poor ventilation. R. at 98. Dr. Sharif-Najafi determined that the Plaintiff's spine disorders, reconstructive surgery of weight bearing joints, and chronic respiratory disorders did not meet or equal the severity of the impairment criteria listed in the Code of Federal Regulations. R. at 95; 20 C.F.R. Part. 404, Subpart. P, App. 1 (2021).

Dr. S. Padmaraju reviewed the medical evidence of record to determine Mr. Moore's disability insurance benefits claim at the reconsideration level. R. at 102-14. Dr. Padmaraju affirmed Dr. Sharif-Najafi's assessment of Mr. Moore's exertional, postural and environmental limitations. R. at 110-12; *see also* R. at 96-98. Dr. Padmaraju determined Mr. Moore to be "not disabled." R. at 113.

## D.       Additional Medical Evidence Provided to the Appeals Council After the ALJ's Decision

### 1.       *FDNY Annual Medical Records and WTC Health Program Records*

Plaintiff provided Annual Medical Records and WTC Health Program Records dated January 17, 2020. R. at 28-32. The reports include Physical Fitness Testing (PFT), Body Mass Index (BMI), blood testing results (Cholesterol, triglycerides, HDL cholesterol, LDL cholesterol, glucose), and glucose testing. R. at 29-32. Results showed that plaintiff's FVC was at 4.28 liters,

10

his $FEV_1$ was at 3.01 liters, both within normal limits in April 2019. R. at 29; *see also* R. at 60.

The reports are dated January 16, 2020. R. at 29-32.

### 2. Dr. David J. Prezant, M.D. - Chest CT Scans

Plaintiff provided additional New York City Fire Department Bureau of Health Services

and NYU Langone Radiology reports from May 7, 2018 through November 12, 2019. R. at 33-

66; *see also* R. at 1469-1470. On May 7, 2018, mild diffuse chronic bronchial wall thickening

and mild upper lobe predominant centrilobular emphysema were detected during a chest CT

scan. R. at 57. The evaluation also detected a 6mm subsolid posterobasilar left lower lobe nodule

that has increased in density since plaintiff's initial evaluation in 2015. *Id*. Plaintiff received prior

chest CT scans on May 27, 2015 and May 2, 2017. R. at 56. The nodule measured approximately

5 mm in 2015. R. at 57. Ground glass also increased from the initial scan in 2015. R. at 54. Dr.

Prezant recommended annual surveillance. R. at 56.

On November 2, 2018, a CT scan determined that mild bronchial wall thickening

detected during the May 2, 2018 scan was stable. R. at 53. The previously referenced 6 mm

subsolid nodule in the posterior left lower lobe was unchanged in size. *Id*. The ground glass

nodule was stable compared with prior studies dating back to 2015. *Id*. The scan detected no new

or enlarging pulmonary nodules. *Id*. Dr. Prezant recommended a repeat chest CT for November

2019 to confirm continued stability. R. at 50. He also recommended a final follow-up CT scan in

two years. R. at 52.

On November 12, 2019, a follow-up CT scan found that the nodule in the posterior

basilar segment of the left lower lobe was unchanged from the scan in November 2018. R. at 48.

Ground glass in the superior segment of the left lower lobe was stable in size and density since

11

2015. *Id*. Mild diffuse bronchial wall thickening was stable. *Id*. Dr. Prezant recommended a

repeat chest CT for November 2020 to confirm continued stability. R. at 47.

### 3.      *Brian Daly - Premier Vocational Experts*

Brian Daly, a vocational expert, completed an employability evaluation on Mr. Moore on

February 7, 2020. R. at 323-80. The evaluation includes findings with respect to employability as

well as an assessment of any transferable skills learned from past occupations within the past 15

years. *Id*. Plaintiff completed a residual functional capacity (RFC) self-assessment. R. at 337.

Plaintiff reported that he can sit, stand, and walk for approximately 20 minutes and lift about five

to eight pounds. *Id*. Based on the RFC self-assessment, Mr. Daly opined that Plaintiff suffered

severe vocational limitations. R. at 340. His physical, emotional and psychological impairments

preclude him from performing Light Work in the national economy. *Id*. He is unable to sit for

more than 30 minutes, stand for more than 30 minutes or walk for more than 30 minutes. *Id*.

Sedentary work requires the ability to sit for six hours and stand and/or walk for two hours out of

an eight-hour workday. *Id*.

## APPLICABLE LEGAL STANDARDS

## II.   Judicial Review of the Commissioner's Determination

In reviewing a final decision of the Social Security Administration ("SSA") under 42

U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), a district court is limited to determining whether the

SSA's conclusions were supported by substantial evidence and whether the Commissioner

applied the correct legal standard. *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012).

"Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted)). To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn. *Mongeur v. Heckler*, 722 F.2d 1033 (2d Cir. 1982).

The substantial evidence standard means that once an ALJ finds facts, a district court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). In other words, this Court must afford the Commissioner's determination considerable deference and may not "substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review. *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal citation and quotation marks omitted).

III. **Commissioner's Determination of Disability**

A. **Definition of Disability**

Under the Act, a disability is defined as one that renders a plaintiff unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). The disability must be serious enough "that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Shaw v. Chater*, 221 F.3d 126 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

### B.       The Commissioner's Five-Step Analysis of Disability Claims

The Commissioner must use a five-step process to determine whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a)(4). Essentially, "if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (internal citations omitted).

The claimant has the general burden of proving that he has a disability within the meaning of the Act and bears the burden of proving his case at steps one through four. *Burgess*, 537 F.3d at 128. However, at step five, the burden shifts to the Commissioner to show that there is other gainful work in the national economy, which the claimant could perform based on his RFC, age, education and prior vocational experiences. *Butts v. Barnhart*, 388 F.3d 377, 381 (2d Cir. 2004), *amended on reh'g*, 416 F.3d 101 (2d Cir. 2005); *see* 20 C.F.R. § 404.1560.

"In the ordinary case, the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids)." *Barnhart*, 388 F.3d at 383 (quoting *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)). However, "exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations." *Id*. In these circumstances, the Commissioner must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Id*. at 383-84.

## IV.    <u>The Decision of the ALJ</u>

The ALJ found that Mr. Moore was not disabled pursuant to the Act. R. at 18.

First, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since May 18, 2018, the alleged onset date. R. at 13.

Second, the ALJ determined that Plaintiff had the following severe impairments: reactive airway disease/asthma, rhinitis/sinusitis, left shoulder derangement, left knee derangement, and degenerative disc disease of the thoracic and lumbar spine. *Id*. Plaintiff's impairments "significantly limit the ability to perform basic work activities as required by SSR 85-28." *Id*.

Third, the ALJ determined that Plaintiff's impairments, alone or in combination, did not meet the medical equivalent of the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1.

Fourth, the ALJ determined that Plaintiff is not able to perform substantial gainful activity in any past relevant work under 20 C.F.R. § 404.1565 due to exertional limitations. R. at 17.

Fifth, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. at 17. Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations: [Mr. Moore] is limited to work with no overhead reaching with the left upper extremity; no more than occasional postural positions, including crouching, crawling, stooping, kneeling, balancing, or climbing stairs; and no concentrated exposure to environmental irritants, including dusts, odors, fumes, and gasses. R. at 14.

In addition, the Commissioner determined that Plaintiff met the insured status requirements of the Act through June 30, 2022. R. at 13. Plaintiff's earnings record shows that he

has acquired sufficient quarters of coverage to remain insured through June 30, 2022. R. at 11.

Plaintiff must establish disability on or before that date to be entitled to disability insurance

benefits. *Id*.

### DISCUSSION

Plaintiff asserts that the ALJ's determination that he is not disabled is erroneous. Plaintiff

makes two main arguments in support of this contention: 1) the ALJ incorrectly determined that

Plaintiff's impairments, alone or in combination, did not meet the medical equivalent of the

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the

"Listings"), and 2) The ALJ's finding that Plaintiff could perform a range of light work in the

national economy is not supported by substantial evidence because the Appeals Council erred in

failing to consider new and material evidence made available after the ALJ issued the decision

denying his application. The court concludes that the ALJ's decision was not erroneous and

addresses each of the Plaintiff's contentions in turn.

I.   **The ALJ's Determination that Mr. Moore's Impairments, Individually or in Combination, Do Not Meet the Medical Equivalent of the Severity of one of the Listed Impairments**

Plaintiff asserts that the ALJ incorrectly determined that his impairments individually did

not meet the medical equivalent of the severity of one of the listed impairments in the Listings.

For a claimant to show that his impairment matches a listing, it must meet all of the specified

medical criteria. *Sullivan v. Zebley*, 493 U.S. 521 (1990). An impairment that manifests only

some of those criteria, no matter how severely, does not qualify. *Id*. An impairment meets a

listed condition only when it manifests the specific findings described in the set of medical

criteria for that listed impairment. *Id*.

16

Plaintiff asserts that the following impairments meet the medical equivalent of one of the listed impairments: reactive airway disease/asthma, rhinitis/sinusitis, left shoulder derangement, left knee derangement, and degenerative disease of the thoracic and lumbar spine. The court disagrees. The ALJ's determination shows that he properly considered Listings 1.02 "Major dysfunction of a joint(s)," 1.04 "Disorders of the spine," 3.02 "Chronic respiratory disorders," and 3.03 "Asthma." These Listings were the most relevant to Plaintiff's left knee, left shoulder, lower back, and respiratory conditions.

The ALJ's finding that Plaintiff's medical impairments, individually, did not meet the medical equivalent of the severity of one of the listed impairments is supported by substantial evidence. The court concludes that the ALJ did not err in reaching this decision.

Plaintiff also asserts that the ALJ failed to consider the combined effect of his impairments. The combined effect of a claimant's impairments must be considered in determining disability regardless of whether every impairment is severe. *Dixon v. Shalala*, 54 F.3d 1019 (2d Cir. 1995). However, for a claimant to qualify for benefits by showing that his combination of impairments is "equivalent" to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment. *Sullivan*, 493 U.S. at 531; 20 C.F.R. § 416.9269(a) (1989). Plaintiff has not provided adequate medical findings to prove that the combination of impairments equals in severity to all of the criteria for the one most similar listed impairment. The claimant bears the burden of proving his case at steps one through four. *Burgess*, 537 F.3d at 128 (internal citations omitted). Claimant has not met that burden.

II.     **The ALJ's Conclusion That Plaintiff Could Perform a Range of Light Work is**
        **Supported by Substantial Evidence**

   After the ALJ issued the decision, Plaintiff submitted supplemental evidence to the

Appeals Council, which included an Employability Evaluation completed by Brian Daly. R. at

323-80. Mr. Daly opined that Plaintiff is unable to perform any sedentary or light work existing

in the national economy. R. at 342. Evidence submitted to the Appeals Council following the

issuance of an ALJ's decision becomes part of the administrative record and the Appeals Council

will assess whether the evidence is new, material, and relates to the period on or before the date

of the ALJ's decision. 20 C.F.R. § 404.970(a)(5). Defendant argues that Mr. Daly's evaluation

was not relevant because it was conducted six months after the issuance of the decision and does

not indicate that the evaluation relates to a period on or before the ALJ's decision. The court

disagrees. The evidence relates to the period before the ALJ's decision and must be considered;

however, it does not add so much as to make the ALJ's decision contrary to the weight of the

evidence. *Rutkowski v. Astrue*, 368 Fed.Appx. 226, 229 (2d Cir. 2010). The Appeals council was

correct in refusing to consider Mr. Daly's opinion because the evidence was not material.

   Mr. Daly's opinion is persuasive in determining that Plaintiff cannot perform the full

range of work at the "light work" level. The ALJ agrees. R. at 17 ("the claimant's ability to

perform all or substantially all of the requirements of this level of work has been impeded by

additional limitations."). However, Mr. Daly's opinion that Plaintiff cannot perform any range of

work at the "sedentary work" level is unpersuasive and inconsistent with the evidence. *See* R. at

340 ("His inability to sit for more than 30 minutes, inability to stand for more than 30 minutes,

and inability to walk more than 30 minutes, all preclude Mr. Moore from performing Sedentary

Work in the national economy on a full-time, competitive basis."). Plaintiff testified that he is

capable of driving, preparing basic meals, doing laundry and light yard work, R. at 270-71, in addition to helping his children prepare for school in the morning and attending his children's sporting events. R. at 267. Dr. Nina Spooner assessed Mr. Moore and concluded that he has mild limitations for sitting, standing, and reaching with the left arm. R. at 1479.

The Commissioner is required to find the plaintiff disabled only if there is not another type of work the claimant can do." *Burgess*, 537 F.3d at 120. The ALJ correctly determined that a vocational expert's testimony was required because the grids guidelines failed to describe the full extent of Mr. Moore's physical limitations. R. at 17 ("To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity."); *see e.g.* *Barnhart*, 388 F.3d at 383 ("the Commissioner must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."). The vocational expert testified that Mr. Moore could work as a survey worker, sales attendant, or photocopy machine operator, which all exist in significant numbers in the national economy. R. at 85-86. Substantial evidence supports the ALJ's determination that Mr. Moore is "not disabled" according to the five-step process under the Act.

## CONCLUSION

Our country and city appreciate Mr. Moore's service in helping to protect our communities; however, the court holds that the ALJ's decision determining that Mr. Moore was "not disabled" is not erroneous and is supported by substantial evidence. For the reasons stated

above, Plaintiff's motion for judgment on the pleadings is **DENIED**, Defendant's cross-motion

is **GRANTED**. The Clerk of Court is hereby directed to close this case.


**SO ORDERED.**

**Dated:**         New York, New York
                  August 31, 2022



                                              <u>/s/ Andrew L. Carter, Jr.</u>
                                              **ANDREW L. CARTER, JR.**
                                              **United States District Judge**

20